Below is an opinion of the court.

_____
PETER C. McKITTRICK
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In Re: | Case No. 25-30549-pcm7 |
| ROBERT ALLEN MCCAIG, | |
| Debtor. | Adv. Proc. No. 25-3031-pcm |
| DONNA L. MCCAIG, | |
| Plaintiff, | MEMORANDUM DECISION[1] |
| v. | |
| ROBERT ALLEN MCCAIG, | |
| Defendant. | |

Debtor Robert A. McCaig (Debtor) filed a chapter 7 petition in February of 2025.  Plaintiff Donna L.

McCaig (Plaintiff) filed an adversary complaint against Debtor captioned Objection to Discharge Pursuant

---

[1]     This disposition is specific to this case and is not intended for publication or to have a controlling effect on other cases.  It may, however, be cited for whatever persuasive value it may have.

to 11 USC § 727(a)(4), 11 USC § 523(a)(6) and 11 USC § 523(a)(2) (the Complaint).  The Complaint also alleges that Debtor is liable to Plaintiff under Oregon's vulnerable person statute and that she is entitled to treble damages and attorney fees, which Plaintiff argues are nondischargeable under § 523(a)(6).  For the reasons stated below, the court concludes that Debtor owes a debt to Plaintiff that is nondischargeable under § 523(a)(6) and § 523(a)(2)(A).  However, the court will deny Plaintiff's claims under Oregon's vulnerable person statute and § 727(a)(4).

FACTS

Plaintiff and Debtor are mother and son, respectively.  Debtor's schedule A/B lists real property located at 18920 SW Cascadia Street in Beaverton, Oregon (the Property).  The Property is jointly owned by Debtor and Plaintiff as tenants in common.  Ex. 28.

Plaintiff moved to Oregon from Texas in June of 2022, after the death of her husband.  Plaintiff testified that after her husband died, Debtor began to contact her regularly, asking her to move to Oregon and live with him and his daughter.  Plaintiff initially moved into a three-bedroom rental house with Debtor and his daughter, where Plaintiff occupied one of the bedrooms.  Plaintiff testified that she received  a large lump sum of money in February of 2023, and that is when Debtor began to express interest in buying property together.

The parties purchased the Property in May of 2023.  Ex. 28, 29.  A three-bedroom home (the Home) is located on the Property.  Debtor and Plaintiff are jointly obligated on the note evidencing the loan that was used to purchase the Property.  Ex. 29.  However, the parties contemplated that Debtor alone would make the monthly payments due under the note.[2]  The agreement between the parties was that Plaintiff

---

[2]    Debtor's statement of intent says that he intends to pay the mortgage "per the contract."  Ex.  1.

Page 2 – MEMORANDUM DECISION

would supply funds upfront to enable purchase of the Property and Debtor would make the ongoing monthly mortgage payments.

The payments made by Plaintiff for which she seeks reimbursement and a determination of nondischargeability in this adversary proceeding fall into two categories:  (1) payments of preexisting debts owed by Debtor that enabled the parties to obtain financing and (2) payments of the type that are normally associated with the purchase of real property.  The court finds that the total amount in the first category is $17,337.57, as shown on Ex. 106.[3]  Payments made by Plaintiff in the second category total $44,000, as shown in Ex. 106.[4]  The total amount that Plaintiff paid toward purchase of the Property is $61,337.57.

Plaintiff testified, credibly, that she moved into the Home first and occupied one of the three bedrooms.  Debtor moved in about a week and half after Plaintiff.  The parties' living situation quickly deteriorated after they began living together in the Home.  Plaintiff testified that Debtor placed cameras in every room of the Home except the bathroom.  She also stated that Debtor did not allow her to have guests and that, when Debtor had guests, she had to stay in her bedroom or find somewhere else to go.  Debtor never allowed Plaintiff to move most of her belongings into the Home.  By April of 2024, relations between the parties had become so tense that Plaintiff moved out of the bedroom in the Home to sleep in an RV that was parked in the backyard of the Property.  The living situation further deteriorated, with Debtor locking

---

[3]    Debtor admitted during his testimony that the debts owed to Lending Club Corporation, Capital One, OneMain LBX 740594, Synchrony Bank/Amazon and Olio Card Services shown on Ex. 106 were his debts.

[4]    Debtor concedes that Plaintiff paid the $39,000 down payment.  His testimony about the source of the $5,000 earnest money deposit was, like much of his testimony, evasive, but the court finds that Plaintiff did in fact make that payment.  Plaintiff testified, and the court believes, that she also paid for the inspection and appraisal of the Property.  However, the record is unclear as to the amount of those payments.

Plaintiff out of the Home and ultimately obtaining a restraining order against her when she tried to force entry into the Home.[5]

Plaintiff initiated a state court action against Debtor in October of 2024, asserting numerous claims, including for partition and sale of the Property.  Ex. 10.  The state court action was stayed by the filing of Debtor's bankruptcy petition.  This adversary proceeding followed.

ANALYSIS

I.  § 523(a)(6)

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"[6]  To fall within the exception of § 523(a)(6), the injury must have been both willful and malicious.  In re Su, 290 F.3d 1140, 1146-47 (9th Cir. 2002).  A plaintiff bears the burden of proving that a claim should be excepted from discharge under § 523(a)(6).  In re Suarez, 400 B.R. 732, 736 (9th Cir. BAP 2009).

A debt results from willful injury if the plaintiff shows that the debtor intended the injury itself, not just that the debtor intended to do the act that resulted in the injury.  Kawaauhau v. Geiger, 523 U.S. 57 (1998).  Conduct is willful "when there is either a subjective intent to harm, or a subjective belief that harm is substantially certain."  Su, 290 F.3d at 1144.  In determining a debtor's state of mind, the court "may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action."  Id. at 1146 n.6.  A malicious injury is "(1) a wrongful act, (2) done

---

[5]     The court does not have any evidence about the terms of the restraining order because it was not introduced into evidence.

[6]     The term "entity" includes a person.  § 101(15).

Page 4 – MEMORANDUM DECISION

intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." In re

Jercich, 238 F.3d 1202, 1209 (9th Cir. 2001)(quoting In re Bammer, 131 F.3d 788, 791 (9th Cir. 1997)).

Plaintiff argues in her trial brief that she "had property rights in her financial resources that were used to pay the debt obligations of Defendant and to make the down payment on the Subject Property. Defendant caused injury to that property right by taking the money and subsequently denying Plaintiff her rights as a tenant in common to the use and enjoyment of the Subject Property." ECF No. 55. Debtor's position is that Plaintiff's financial contributions, which total over $60,000, were an outright gift to him and that she had no rights in or to the Property. Debtor's position defies common sense and the evidence.

Plaintiff testified that she never intended to live in the Home forever. The parties agreed that Debtor would refinance when he was able and return Plaintiff's contributions that enabled the parties to purchase the Property. The fact that Plaintiff and Debtor co-own the Property as tenants in common supports Plaintiff's position and completely undermines Debtor's. If the funds Plaintiff supplied were an outright gift to Debtor, Plaintiff would not have ended up on title. Plaintiff lived with Debtor in a rental house immediately before the parties purchased the Property. She testified, without contradiction, that she invested essentially all her savings in the Property. It would make no sense for her to do that and end up with nowhere to live and no funds to secure alternate housing, especially because Plaintiff has limited earning potential.

In determining that Plaintiff's financial contributions to the purchase of the Property were not a gift to Debtor, the court relies in part on its assessment of the parties' credibility. Debtor's testimony was evasive and he rarely directly answered the questions posed to him. During his closing argument, Debtor stated that he had "never once" denied that Plaintiff has an ownership interest in the Property. That is demonstrably false and indicative of Debtor's overall lack of credibility in this proceeding, in addition to

Page 5 – MEMORANDUM DECISION

being irreconcilable with his position in this matter that Plaintiff made him an outright gift of the funds she contributed to the purchase of the Property.  See Ex. 3 (Debtor opposing Plaintiff's motion for relief from stay by stating that Plaintiff "never contributed any funds . . . on [the Property]" and denying that Plaintiff "has any interest" in the Property.").  Debtor changed his position in other documents he filed in the case.  See Ex. 6 (Debtor opposing mortgage creditor's motion for relief from stay by stating that he is trying to refinance but that Plaintiff is on title and allegedly refusing to cooperate.).  Although there were discrepancies in some of Plaintiff's testimony, on the issues that are material and pertinent to the dispute that is currently before the court, Plaintiff was the more credible party.

"'In the absence of contradictory evidence, it is presumed that co-owners enjoy equal rights to use and control the property, independently of the other owner's knowledge or consent.'"  Church v. Woods, 190 Or. App. 112, 118 (2003)(quoting Sheppard v. Weekly, 72 Or. App. 86, 92 (1985)).  See also Grant v. Paddock, 30 Or. 312, 315 (1897)(tenant in common must allow co-tenant possession of property).

> A cotenant may not interfere with another cotenant's right of possession.  If a cotenant denies possession to another cotenant, the ousted cotenant may bring an action to recover possession.  ORS 105.050 provides:  "In an action by a tenant in common of real property against a cotenant, the plaintiff shall show, in addition to the evidence of right of possession, that the defendant either denied the plaintiff's right or did some act amounting to a denial."

1 Oregon Real Estate Deskbook (OSB) § 3.3-2(d) (Legal Pubs 2015).  The court finds that, as a co-owner of the Property, Plaintiff was entitled to full use of the Property.[7]

Debtor acted willfully within the meaning of § 523(a)(6) when he denied Plaintiff full use and enjoyment of the Property.  Debtor knew that Plaintiff co-owned the Property yet he took actions intended to make Plaintiff so uncomfortable and intimidated that she would leave the Property on her own.  When he

---

[7]    Debtor argues that the parties agreed that Plaintiff would have no access to the Home.  The court rejects that argument, for the reasons discussed below in connection with Plaintiff's § 523(a)(2)(A) claim.

Page 6 – MEMORANDUM DECISION

was not successful in getting Plaintiff to fully abandon the Property, Debtor physically locked Plaintiff out

of the Home.  See Exhibit 39 (Debtor acknowledging that he refused Plaintiff access to the Home).  Debtor

must have known the damage that would result to Plaintiff when he did so.  A debtor is charged with

knowledge of the natural consequences of his acts.  In re Ormsby, 591 F.3d 1199, 1206 (9th Cir. 2010).  In

fact, Debtor admitted, in a prepetition text message and in testimony at trial, that he harbors long-standing

resentments against Plaintiff and believes he is entitled to compensation for perceived past wrongs.  In the

Spring of 2024, Debtor sent Plaintiff a text message that states, in part:

> You are happy to pay and support your degenerate son for everything in life no matter how many times he has [expletive] up or screwed you over and stolen from you, and you are happy to dote on your other son for everything he's done but when it comes to me or ever came to me the only way to get any support from you as a parent was to force it out of you.  It's good to know here I stand and always will.  Fyi, this is my house, yeah you are on the paper work [sic], but I swear to whatever God you believe in and everything that i [sic] am if you try to take it from me in anyway [sic], You will not be prepared for what comes.

Ex. 102.

The injury inflicted on Plaintiff by Debtor was malicious within the meaning of § 523(a)(6).  Debtor

acted intentionally and wrongfully in excluding Plaintiff from the Property.  Doing so necessarily injured

Plaintiff and was done without just cause or excuse.  At trial, Debtor argued that Oregon law permitted him

to exclude Plaintiff from the Home because the Home constituted his domicile.  See Ex. 104.  Debtor

provided, and the court could find, no authority to support the proposition that one co-owner may

unilaterally deny another co-owner full access to jointly owned real property.

Plaintiff alleges that Debtor is liable for financial abuse and that she is entitled to treble damages and

attorney fees under Oregon law, which are nondischargeable under § 523(a)(6).  The court will deny this

claim because Plaintiff is not a "vulnerable person" within the meaning of the applicable statute.

Page 7 – MEMORANDUM DECISION

As pertinent here, the following constitutes financial abuse under ORS 124.110(1)(a):

When a person wrongfully takes or appropriates money or property of a vulnerable person, without regard to whether the person taking or appropriating the money or property has a fiduciary relationship with the vulnerable person.

Only a "vulnerable person" may bring an action for financial abuse under ORS 124.110(1)(a).   The term "vulnerable person" is defined in ORS 124.100 to mean:

(A) An elderly person;

(B) A financially incapable person;

(C) An incapacitated person; or

(D) A person with a disability who is susceptible to force, threat, duress, coercion, persuasion or physical or emotional injury because of the person's physical or mental impairment.

ORS 124.100(1)(e).   Plaintiff relies only on her status as a person with a disability.

A "person with a disability" within the meaning of ORS 124.100 is a person with a physical or mental impairment that:

(A) Is likely to continue without substantial improvement for no fewer than 12 months or to result in death; and

(B) Prevents performance of substantially all the ordinary duties of occupations in which an individual not having the physical or mental impairment is capable of engaging, having due regard to the training, experience and circumstances of the person with the physical or mental impairment.

ORS 124.100(1)(d).

The court is skeptical that Plaintiff qualifies as a "person with a disability" within the meaning of ORS 124.100(1)(d) because the statute appears to require a complete inability to work, and Plaintiff does have a job.  However, even if the court assumes that Plaintiff qualifies as a "person with a disability" for purposes of Oregon's financial abuse statute, she is still not a "vulnerable person."  A "person with a disability" qualifies as a "vulnerable person" only if they are "susceptible to force, threat, duress, coercion,

Page 8 – MEMORANDUM DECISION

persuasion or physical or emotional injury <u>because of the person's physical or mental impairment</u>."  ORS 124.100(1)(e)(D) (emphasis added).  Nothing in the record suggests that Plaintiff is susceptible to force, threat, duress or coercion, persuasion or physical or emotional injury due to the nature of her disability.  Plaintiff may have been vulnerable to Debtor's efforts to extract financial support from her, but that is because he is her son and the father of her grandchildren, not because of her disability.[8]

For the reasons stated above, the court finds that Plaintiff has met her burden of showing that the debt in the amount of $61,337.57 owed to her by Debtor is nondischargeable under § 523(a)(6).

II.  § 523(a)(2)(A)

Section 523(a)(2)(A) provides that a discharge does not discharge an individual debtor from any debt for money to the extent obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]"  A creditor seeking to prove that a debt is nondischargeable under section 523(a)(2)(A) must prove the following elements:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

In re Harmon, 250 F.3d 1240, 1246 (9th Cir. 2001).

Plaintiff argues that Debtor wanted to buy a home but could not do that on his own because he had too much debt and no down payment.  According to Plaintiff, Debtor told her that, if she helped him buy property, she would be a co-owner and co-occupant of the property and that he would make the ongoing mortgage payments out of his income.  According to Debtor, Plaintiff made him an outright gift of over

---

[8]    Plaintiff testified, and documentary evidence supports, that Debtor threatened to withhold access to his children if Plaintiff did not go through with purchase of the Property.  Ex. Q, pp. 1,5.

Page 9 – MEMORANDUM DECISION

$60,000 and Plaintiff agreed she would not reside in the Home.  Once again, Debtor's position defies common sense and the evidence.

The court finds that Debtor told  Plaintiff that she would be able to live in the Home prior to the purchase of the Property.  Plaintiff and Debtor own the Property as tenants in common, which, as the court discusses above, results in both of them having a legal right to full enjoyment the Property, absent evidence of an agreement to the contrary.  No such agreement exists in this case.  If the funds Plaintiff supplied were an outright gift to Debtor, Plaintiff would not have ended up on title.  Plaintiff lived with Debtor in a rental house immediately before the parties purchased the Property and she invested essentially all of her money in the Property.  It defies reason to believe she would have done that, and left herself homeless.  The escrow agent and the parties' real estate agent both testified, in convincing detail, that they understood Plaintiff would be living in the Home.  Finally, Debtor's own words disprove his contention.  Before the parties purchased the Property, Debtor wrote a letter to the owners stating, in part, that:

> I am very interested in the home because I am a single parent of two daughters . . . whom I have custody of and I am looking for a forever home to raise them, my mother will be living with us and helping me with the girls, and we believe this is the perfect home for us.

Ex. 27.  It is true that Plaintiff eventually vacated the bedroom in the Home that she previously occupied, but she did that only after the parties' living situation had become untenable.

Debtor knew that he intended to prevent Plaintiff from living in the Home before the parties purchased the Property.  Debtor told Plaintiff not to talk about their plans to buy the Property, Ex. Q, p. 2, suggesting that he intended to prevent Plaintiff from enjoying the full rights of property ownership once the purchase was completed.  Debtor's efforts to make co-habitation impossible and limit Plaintiff's use and enjoyment of the Home began shortly after the Parties purchased the Property, further indicating the

Page 10 – MEMORANDUM DECISION

requisite intent.  Finally, as was discussed above, Debtor believes Plaintiff owes him for past perceived wrongs and extracting money from her for the purchase of the Property was his way of obtaining restitution.

Intent to defraud may be inferred from the totality of the circumstances, Grogan v. Garner, 498 U.S. 279, 286 (1991), and may be proven by circumstantial evidence or interferences drawn from the debtor's course of conduct.  In re Wills, 243 B.R. 58, 64 (9th Cir. BAP 1999).  "Courts can consider a course of conduct and subsequent conduct in determining fraudulent intent as long as that conduct provides an indication of the debtor's state of mind at the time of the false representation."  In re Johnson, 638 B.R. 782, 794 (Bankr. C.D. Cal. 2022).  Based on the totality of the circumstances, the court finds that, when Debtor falsely represented to Plaintiff that she would be living in the Home, he did so with the intent to deceive her, so that she would provide the funds he needed to purchase the Property.  The evidence, taken in its entirety, reveals that Debtor was determined to persuade Plaintiff to provide funds so that he could own a home, something he could not do on his own.  To accomplish his goal of home ownership, Debtor needed to convince Plaintiff that she would be living in the home too.

Finally, the court finds that Plaintiff justifiably relied on Debtor's promise that she could live in the Home and that her reliance on that promise was the proximate cause of the damages she incurred.  Section 523(a)(2)(A) requires justifiable, not reasonable, reliance.  Johnson, 638 B.R. at 796.  This is a subjective standard and a court must consider the circumstances of the particular case, including the parties' relationship.  Id. at 796-97.  Plaintiff's reliance on Debtor's promise that they would jointly occupy the Home was justifiable in the circumstances of this case.  Debtor is Plaintiff's son and she had been living with him prior to purchasing the Property.  It makes sense to trust that the same living arrangement would continue after the parties purchased the Property.  Moreover, Plaintiff and Debtor acquired the Property as joint owners and she had a legal right to live in the Home.  With regard to causation, the court finds that

Page 11 – MEMORANDUM DECISION

Plaintiff's reliance on Debtor's promise proximately caused her damages.  As is discussed above, it defies common sense to believe that Plaintiff would have given Debtor all of her savings and left herself with nowhere to live and no money to secure alternate housing.

For the reasons stated above, the court finds that Plaintiff has met her burden of showing that the debt owed to her by Debtor is nondischargeable under § 523(a)(2)(A).

III.  § 727(a)(4)

The court finds that Plaintiff did not meet her burden of showing that Debtor should be denied a discharge under § 727(a)(4).  Although there were some discrepancies in Debtor's schedules and statement of financial affairs, his transgressions do not rise to the level required to deny Debtor a discharge.

CONCLUSION

For the reasons stated above, the court concludes that Debtor owes a debt to Plaintiff in the amount of $61,337.57 that is nondischargeable under § 523(a)(6) and § 523(a)(2)(A).  Counsel for Plaintiff is directed to submit a judgment no later than 14 days after entry of this memorandum decision.

###